In effective range, Mr. Merriman, we're ready if you are.  May I proceed? Counsel, please. May it please the Court, Brian Merriman on behalf of the defendants and appellants, Nestle Purina Pet Care Company and Royal Canin. Your Honors, I have asked for four minutes for rebuttal. The District Court had original subject matter jurisdiction over this action, pursuant to 28 U.S.C. 1331, because the plaintiff's state law claims implicate significant federal issues, such that they are considered arising under the laws of the United States for purposes of federal question jurisdiction. Here, the District Court erred by ignoring important federal issues requiring it to determine whether the FDCA and the CPG apply and how therapeutic pet food fits into the regulatory scheme, and instead concluded that simply because the plaintiff's alleged defendants violate the FDCA, all that is left for a court to do here is to determine whether the alleged prescription requirement is deceptive. The District Court, importantly, also erred by not considering at all plaintiff's request for a declaration that defendants are violating federal law and not addressing the plaintiff's request for a forward-looking injunction requiring defendants to comply with federal law. Plaintiff's request to declaratory and injunctive relief is sufficient on its own. In addition to being considered as part of the grable gun factors, it can be the request for injunctive and declaratory relief regarding federal issues can be considered on its own as sufficient to support arising under federal question subject matter jurisdiction. In this case, based on Supreme Court authority, the grable gun factors, and Eighth Circuit federal arising under authority in Pet Quarters and County of St. Charles, where the relief on which federal question jurisdiction was based was solely in the prayer for relief, arising under jurisdiction exists for plaintiff's state law claims. Federal jurisdiction lies here over state law claims under grable and gun if, one, the federal issue is necessarily raised, two, actually disputed, three, substantial, and four, capable of resolution in federal court without disrupting the federal-state balance approved by Congress. This case is one of the narrow group of cases that fall into what the grable gun factors allow to be arising under federal question jurisdiction cases. Here, the prayer for relief sums up numerous allegations in the complaint that require addressing federal issues. The prayer for relief requests the court enter orders and judgment as follows. Quote, is stopping defendants from denying prescription pet food as a drug. That's in the joint appendix at page 68, paragraph 138. From the prayer for relief, quote, the plaintiffs seek to enjoin defendants to comply with all federal and Missouri and then skipping provisions applicable to the manufacture of such drugs. Close quote, joint appendix 68 at paragraph 138 in the complaint. The prayer for relief further seeks, plaintiffs seek, quote, enjoining defendants from engaging in further such violations of law. Close quote. Those violations of law, contrary to what the plaintiffs now argue in retrospect, a fair reading of the complaint in total is that the violations of law that they seek to enjoin include, and really for the most part are, the multiple violations of law that permeate the complaint, the multiple violations of federal law, alleged violations of federal law that permeate the complaint. That's joint appendix 68 at 137. And finally, plaintiffs seek a declaration, quote, finding, adjudging, and decreeing that defendants have engaged in the violations of law alleged in this petition. That's the joint appendix 68, paragraph 136. Again, those violations of law are the many federal issues raised in the complaint. Then when we go to the complaint itself and the allegations in the complaint leading up to those prayers for relief, we see that this is all about federal questions. Your honors can just look, starting in the first page of the complaint, paragraph 2 basically tells the story where it's clear the plaintiffs are seeking relief for violations of the FDCA and the CPG. The federal issues in the complaint that clearly fall within the grable gun factors include whether prescription pet food is not, as plaintiffs allege, and this is a quote from their complaint, quote, legally required or allowed to be sold by prescription. That's the joint appendix, page 34, paragraph 41. The plaintiffs also raise this federal issue, whether defendants, quote, were clearly not in compliance with conditions 5, 6, and 7 of the draft CPG, close quote. That's joint appendix 41, paragraph 63 of the complaint. The plaintiffs seek an answer to this federal issue, whether defendants, quote, despite the publication of the final CPG, moving further in the sentence, have complied with neither the FDCA nor the conditions for exercise of enforcement discretion set forth in the CPG, close quote. That's joint appendix 45, paragraph 71 of the complaint. And finally, the plaintiffs seek the answer to this, raise this federal issue, whether, quote, all three manufacturers violated the draft CPG and the FDCA, close quote. That's joint appendix 48, paragraph 74. All of these federal issues raised in the complaint can't be cast aside as surplus or anticipating a federal preemption defense or one of the answers that they raised for the first time in their appellant brief. These are core to deciding the state law claims that plaintiffs- I don't really see that until I get to the prayer for relief. I'm not sure I see the substantiality of what you've just read. I mean, it's there, and it might have been- how essential it is to proving the core deception that I read into the basis for the MMPA claim. So, Your Honor, we can't get to whether or not there was deception until we first answer a number of those questions regarding- Well, let's just take- your advertising creates the impression with consumers that a prescription is required, and that's not true. And that's a deceptive incentive to encourage overpricing. I don't see that that's- whether that's true or not, I'm sure it's a federal question, but I don't see that it's substantial to the Food and Drug Administration's- It does. It's substantial for a couple of reasons, Your Honor. First, the plaintiff's theory assumes that the defendant's products are required to comply with the FDCA and the CPEG, and that the products don't comply, and as a result, consumers have been misled. Well- Excuse me. Go ahead. This requires interpretation of federal law. Okay. Does their complaint really do that, though? Also, couldn't they prove this claim simply by establishing that- by labeling it and informing people that it requires a prescription, that if they proved that it was never submitted for review by the FDA, that it could, by definition, have never had a requirement for a prescription, and that would just be enough. And you wouldn't have to prove any federal thing at all at that other than that it was never submitted for review. That assumes- Your Honor's question assumes that the product had to be submitted for review. Well, no, it doesn't really, because the thing is, what it presumes is, when you tell the public that they- that you're not going to sell it without a prescription, that a reasonable inference could be drawn from a member of the public that you must need a prescription. And you turn around and say, well, you never did submit it, so there is no need for a prescription. And those are all just fact questions decidable by state courts, in state law, right? No? No, Your Honor. Here, the plaintiffs are the masters of their complaint. They certainly are, and their biggest problem is the way they drafted this complaint. I got that. They're the masters of the complaint, and that's not the complaint that the plaintiffs filed. The complaint the plaintiffs filed is the one that I went through in detail. That's the complaint they filed. The complaint they filed requires the court to address all of these federal issues to reach the ultimate state law issue that Your Honor raised. And moreover, as I think Judge Loken mentioned, ultimately the proof of the complaint that they filed being different than the one Your Honor raised is the prayer for relief, which seeks forward-looking injunctive relief. And the second part of the answer, if I may, is this industry, as the complaint alleges, is a nationwide, over $2 billion industry. And whether and how the FDCA and the CPG regulatory scheme applies to defendant's products is, these are important federal issues that have been raised and should be determined in federal court. So far, with what you read off as all of these issues, none of them strike me as more substantial than the misbranding question in Merrill Dow. Your Honor, you're implying to the customer that the federal law required a prescription. Well, how is that more essential to the federal regime than a misbranding question? So in Merrill Dow, the issue was a state law deception claim, but the issue had to do with a commonplace personal injury case and whether or not there was really a private right of action under the FDCA. This is a common business tort. But there, there weren't issues of what the FDA was regulating. The product in Merrill Dow had gone through FDA compliance. There was no question that the product had to go through an approval process. And the issue was whether the defendant had not made a disclosure in addition to what they thought they were required to disclose. Here, the initial threshold question is whether the FDCA and the CPG even apply to these products. And if it does, if they do, how? Here, the defendant is the exact opposite of Merrill Dow. The defendants are being accused of saying, giving too much disclosure. Doesn't the FDA's inaction, a pretty strong indication that the question you're now talking about is not that essential to the federal regime? Well, it is. And therefore, Congress kind of presumptively left it to state tort law. It is essential to the federal regime, Your Honor, because we haven't. But they may be doing something about it. That's my point. Well, it is essential to have a federal court look at this because an entire industry is operating based on an understanding that the plaintiffs are challenging. And in Missouri, I'm complying with the MMPA. My, Your Honor, I think to get to the ultimate MMPA. We don't have preemption here like we do in the medical device regime. Correct, Your Honor. We are not arguing preemption. We have not raised preemption. And we didn't raise it in the Moore case in California. Yeah, but the absence of preemption is part of the landscape. Can I? I'm sorry. I just have one question. It really goes to this whole injunctive relief that says must comply with all federal laws. What kind of an injunction is that? I mean, you know, don't you have to comply with federal law all the time? And can that really implicate any other federal questions? I mean, I don't like that prayer for relief because I think at the end, you know, it creates all kinds of problems for us. But a prayer that just says follow the law? Well, we've held it would violate Rule 65 if it was entered as prayed for. Your Honor, that's a good question Your Honor has raised, one which I've thought about. But I think for purposes here today, the answer to Your Honor's question is that's a merits question. And the answer to Your Honor's question is all that this panel, Your Honor should be thinking about today, is whether that prayer for relief is a basis for arising under federal question jurisdiction, under grable and gun and our position as it is. I've gone past my reserved time. If Your Honors don't have any other questions, I'll wait for rebuttal. Thank you. Mr. Shulman? Yes, may it please the Court, first, let me apologize for not being there in person. Second, let me thank you for your accommodating me. And third, let me assure you I'm standing up straight in my office in my best suit and tie. I want to make three points. The complaint doesn't raise a federal question. Five U.S. Supreme Court decisions support this and require remand. And the prayer for relief doesn't create federal jurisdiction. Let me start with Empire Health Choice v. McVeigh. And the Supreme Court says a case arises under federal law within the meaning of Section 1331 if a well-pleaded complaint establishes either that federal law creates the cause of action, so that's one thing, or, second, that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. And the two key words there are necessarily and substantial. Well, it seems to me that's the way you've pleaded it, that the ongoing violation of federal law, you've made an element of your MMPA claim, which, I mean, that's what's well-pleaded, whether it was... Well, let me respond to that. I respectfully differ on that. The allegations regarding the CPG and the MCAD and the FDCA do not appear in this complaint until Paragraph 55 and the paragraphs that follow. And that is, that section of the complaint, which is Section C2, is entitled the Combination and Conspiracy Perpetuation. And that's important, where they occur and what their purpose is. We allege that this action was done collectively and in furtherance of a conspiracy to raise and enhance prices. And the allegations regarding the CPG essentially are in the complaint to reinforce that by showing that in 2012, the FDA issued its CPG in which the FDA expressed the opinion that the makers of therapeutic pet food, which these defendants are, were in violation of the FDCA. And that created a huge problem for them because it basically threatened their business model. And so what did they do? They met together and they had a choice. We either discontinue this or we continue it. And they chose to continue it even though, in the view of the FDA, they would be violating the conditions of the CPG and the FDCA, the Federal Drug and Cosmetic Act. And you think any state court judge could figure that one out, so they ought to be able to. Well, I mean, that's the way it's pleaded in the complaint. I'm hoping that's it. Well, I know, but the question is what does it, whether the federal courts have an important role to play in determining that. That's a very ambiguous and complex question of federal law. This is a simple case. Not if the agency was wrong in its declaration. No, and let me respond to that. This case is about a seller selling a product using a scheme, using a marketing device, a prescription, which misleads consumers into thinking that the seller has done something that the seller has not done. I mean, it is that simple. You could have pleaded that simply. Instead, you pleaded that they violated the MMPA by not submitting the product for required federal approval. That is not what we said was. The way that is pleaded in the complaint is that the FDA had that opinion, and that is reinforcing the allegations that this was joint action and not independent action, because they continued doing this and risking FDA sanctions, something that each would not have done independently because of being exposed would result in an irreparable loss of consumer goodwill. That's what those allegations say. That's where they appear in the complaint. The first part of the complaint says, which deals with the consumer fraud, the MMPA, that they used a device that caused consumers to believe that a governmental authority had reviewed and approved this product as being safe, efficacious, and medicinal, when, in fact, that had never occurred. Let me ask you this. Under Grable and its succeeding cases, if any part of the complaint confers federal jurisdiction because it meets the criteria of Grable, wouldn't I be right that means the whole case is here? Well, if, in fact, your premise is correct, then the conclusion would be, in this particular case, it's not correct. I don't understand the answer. Hold on. I'm sorry. My question is this. If you're trying to prove, if you think that, to prove your case, you have to establish the existence of a conspiracy, that that conspiracy involves an intent to mislead because they risked FDA sanctions, don't you have to prove that the FDA sanctions are there, that they exist, and that they are, in fact, in violation? And if that has to be done, isn't there a substantial federal question? No, we don't have to prove that they actually exist. All we have to prove is that they faced, the FDA expressed that view, and they were under the threat of whether they would comply with it or not, and they chose not to. But even if we have to show that they were in violation, that doesn't, it's not substantial. I mean, it's not disputed here that a prescription is not required, that they never submitted their products, and that they used the device, I mean, this is alleged and has to be taken as true, that led consumers to believe that the product had been reviewed and approved. And, in fact, it was never submitted. I mean, that's the essence of the case. They went out, they used the device, it misled consumers into believing something, that they'd done something that they hadn't done. That doesn't create federal jurisdiction. And the second part of the case is that they did it collectively, that they did it by agreement, that this was done pursuant to a price-fixing conspiracy. And the allegations that we put in about the CPG essentially fortify and tend to exclude the possibility of independent action, tend to exclude it. So that's where they are in the complaint. And, you know, I think the five Supreme Court cases, which are Merrill Dow, Grable, YFV Levine, and Empire Health Choice, and Gunn show that these cases, Congress didn't want these cases in the federal court. I mean, that's in Merrill Dow, I'm sorry, in Grable, the court says that Merrill Dow was correctly decided because, well, because the absence of a federal private cause of action showed the absence of a welcome mat, and furthermore, they say a general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts. They have cited no authority for this kind of case to be in federal court. The cases they cite are primarily devices cases where there are issues of preemption, even though they're not discussed. You know, in Grable, the court makes reference to a horde of original filings and removal cases raising other state claims with embedded federal issues. A tremendous number of cases. Let me read you a passage from Grable. I know you're familiar with it. The government thus has a direct interest in the availability of a federal forum to vindicate its own administrative actions, and buyers and tax delinquents may find it valuable to come before judges used to federal tax matters. I can't think of anything more applicable to the world of the Federal Drug and Cosmetic Act than that. Well, that case, there was no relief in that case without proof or construction of the federal tax code. That is not the case here. We don't have to prove... I'm back to what you meant by my premise is correct. The injunction you want is directly implicated in what I just read. Now you want to talk about the other half of your remedy and say I should ignore the part that Grable covers. Well, if Grable covers any of it, it covers all... Well, jurisdictionally, Grable doesn't have to overlay the entire complaint, does it? Yes, but, okay. The prayer for relief involves two lines in more than a 50-page complaint. And the claims themselves that are asserted are all state law claims. The Supreme Court said in Merrill Dow that state courts can, to the extent there are claims of federal violations, state courts can construe those. They can decide those, and if they're wrong, there's a right to review in the U.S. Supreme Court. So, there is no authority that says that that type, that just the prayer for relief by itself is sufficient to create federal arising under jurisdiction. They don't cite any case that says that. Two-minute warning. Oh, thank you. I just think that if we apply the Grable gun test, is there a claim that arises under federal law? I submit there isn't. We don't have to prove that they were required to get approval from the FDA, or it doesn't matter. All we have to show is that they misled consumers into thinking that they were, that they had done something they hadn't done, and that they did it collectively. That is all that we are required to show to win the MMPA claim and also the Missouri Antitrust Act claim. And, I mean, it's really that simple. Despite all the allegations about the CPG, those, they anticipate a defense, and they also tend to exclude the possibility of independent action by showing that they were under threat, they had to make a decision about what to do, and nobody individually would have chosen to continue, but when they were all inside the tent, and basically when they talk about a $2 billion industry, it's just these three companies. So they're all inside the tent, and if they're all doing it together, they have much less risk. But if one of them does it and gets exposed, they tend to lose consumer goodwill, because the whole thing works on the propensity of consumers to love their pets and trust their vets. Your time has expired. Thank you. And I'm done unless the Court has questions. Thank you, Mr. Shulman. I don't see that we have any more questions. Is there a rebuttal time?  Two minutes. Thank you, Your Honor. Your Honor, I'd like to respond to some of the points raised by counsel. First of all, the statement that there's no authority, that the prayer for relief is sufficient to invoke rising under federal question jurisdiction is not correct. In the Eighth Circuit, County of St. Charles, cited in our brief, is on point. That case relied on solely the relief sought, a declaration sought in the prayer for relief, regarding an interpretation of the use of, whether after parental consent or without parental consent, Title X funds were available. So that's an Eighth Circuit case. Mitskovsky, cited in the brief from the Second Circuit, is another case where the prayer for relief provided sufficient grounds for rising under federal question jurisdiction. Ortiz Bonilla, from the First Circuit, provided as authority for the concept that the prayer for relief is sufficient. And in this circuit, there are several district court opinions, similarly finding that the prayer for relief provides a sufficient basis for a rising under federal question jurisdiction, including Starr from the District of Minnesota. This case, Your Honor, is exactly as Judge Loken said. It's an ambiguous and complex case of federal law. And as Your Honor's accurately pointed out, this is exactly the kind of case that Grable and Gunn, Grable in particular, said is appropriate. It falls in the narrow scope of cases that meet all the Grable-Gunn factors. Because these complex federal issues require consistency across the federal courts, and as the Supreme Court noted, the federal courts are uniquely positioned to provide that consistency on the federal issues here that are essential for this $2 billion industry. Federal issues and law are at the crux of all of the claims alleged in the complaint, not just the antitrust claim. Your time is up. One last question. Do you know of any case law whether plaintiffs who have been subjected to federal question jurisdiction under Grable have been allowed to amend out of it and get a remand? I'm not aware of such a case, Your Honor. Or the issue arising? Or even the issue arising, and it wouldn't make sense, because the plaintiffs are the masters of the complaint, and the court has to look at how they pled the complaint, not how they— Well, it happens all the time in other removal contexts. Yeah, what they do after the fact. Thank you, Your Honor. Thank you, counsel. The case has been well briefed and argued, and we appreciate your willingness to consent to a briefing and argument that solve our cap of time problems. And, Mr. Shulman, we're sorry you couldn't be here. We appreciate your doing it by phone. I think it's been effective from your standpoint. Thank you. Court will be in recess until 8.30 in the morning.